OPINION
{¶ 1} Appellant Harold Hileman appeals his conviction, in the Ashland Municipal Court, for one count of aggravated menacing. The following facts give rise to this appeal.
 {¶ 2} On February 4, 2004, appellant was charged with aggravated menacing, in violation of R.C. 2903.21, following a telephone call he made to the home of Howard Grim, the Director of the Ashland County Child Support Enforcement Agency. Appellant spoke with Howard Grim's spouse, Barbara Grim, and informed her, among other things, that he intended to shoot and kill his ex-wife's father, Dale Hershey.
 {¶ 3} Following the telephone call, Barbara Grim contacted her husband to inform him of the call. Howard Grim contacted the Ashland County Sheriff's Department. Deputy Martin, of the sheriff's department, located Dale Hershey and informed him that appellant had threatened to shoot and kill him. Mr. Hershey believed that appellant would follow through with his threat.
 {¶ 4} On March 17, 2004, prior to the commencement of trial, appellant filed a motion to dismiss the charge of aggravated menacing on the basis that his conduct did not rise to a violation of R.C. 2903.21 because the threat of harm was not made to the victim or the victim's immediate family. The trial court overruled appellant's motion on May 10, 2004. This matter proceeded to a bench trial on June 18, 2004. The trial court found appellant guilty as charged and sentenced him accordingly.
 {¶ 5} Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 6} "I. The court erred to the prejudice of the defendant-appellant, as a matter of law, because there is no violation under § 2903.21, Ohio Rev. Code Ann., where alleged threats are uttered to one who is neither the purported victim nor a member of the immediate family of the purported victim.
 {¶ 7} "II. The trial court erred to the prejudice of the defendant-appellant because the finding that the defendant-appellant acted with the requisite mental state is contrary to law and against the manifest weight of the evidence."
 I {¶ 8} Appellant maintains, in his First Assignment of Error, that the trial court erred when it found he violated R.C. 2903.21 where the threats were not uttered to the purported victim nor a member of the immediate family of the purported victim. We agree.
 {¶ 9} This assignment of error requires us to interpret the language of R.C. 2903.21(A). According to the well-settled rules of statutory construction, in interpreting a statute, a court's principal concern is the legislative intent in enacting the statute. State ex rel. Francis v.Sours (1944), 143 Ohio St. 120, 124. In order to determine that intent, a court must first look at the words of the statute itself. Provident Bankv. Wood (1973), 36 Ohio St.2d 101, 105.
 {¶ 10} The statute we are required to interpret in the case sub judice, R.C. 2903.21(A), sets forth the crime of aggravated menacing and provides as follows:
 {¶ 11} "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."
 {¶ 12} Appellant contends the statute is clear that the threat of serious physical harm must be to the person or property of the other, the other person's unborn, or a member of the other person's immediate family. In the case sub judice, appellant's threat of serious physical harm was made to Barbara Grim, who was not the intended victim in this case nor the immediate family member of Dale Hershey. Thus, appellant concludes the trial court should have dismissed the charge of aggravated menacing.
 {¶ 13} In response, the state maintains that R.C. 2903.21 does not require that the victim be present when the threat was made. Rather, the issue is whether the appellant had the requisite mental state, i.e. did he act knowingly in making the threats.
 {¶ 14} The appellate courts in the State of Ohio are split on this issue. The First District Court of Appeals has held that the threat constituting menacing need not be made in the presence of the intended target. See State v. Roberts (Sept. 26, 1990), Hamilton App. No. C-890639; State v. Kuhn (Mar. 28, 1984), Hamilton App. Nos. C-830489, C-830490. The Twelfth District Court of Appeals has followed the First District's interpretation. See State v. Manny (May 26, 1992), Warren App. No. CA91-06-054.
 {¶ 15} However, the Eleventh District Court of Appeals and the Seventh District Court of Appeals have reached the opposite conclusion and have held that in order to find a violation of R.C. 2903.21, the alleged victim must be either the person to whom the defendant addressed his or her statement or a close relative of that person. See State v. Chmiel
(Sept. 26, 1997), Lake App. No. 96-L-173; State v. Richard (Aug. 26, 1998), 129 Ohio App.3d 556. We would note that the Seventh District Court of Appeals recently concluded, in In the Matter of Cunningham,
Harrison App. No. 02-537-CA, 2002-Ohio-5875, that the threat constituting menacing need not be made in the presence of the intended target. Thus, a conflict exists, in the Seventh District, as to the interpretation of R.C. 2903.21.
 {¶ 16} Upon applying the rules of statutory construction, we agree with the Eleventh and Seventh District Courts of Appeals' interpretation of R.C. 2903.21 as explained in the Chmiel and Richard cases.
 {¶ 17} In the Chmiel case, the defendant contacted a mental health agency regarding some thoughts she had been having about a three-year-old neighbor girl. Id. at 1. The community support coordinator, at the mental health agency, told the defendant that she had to notify the police of their conversation. Id. One day after her conversation with the community support coordinator, the defendant contacted the police to ask if there was a warrant for her arrest. Id. The police officer defendant spoke to indicated there was no warrant for her arrest. Id. However, the officer asked her questions concerning what street she lived on and what she intended to do to the little girl. Id.
 {¶ 18} Following this conversation, three police officers began canvassing the neighborhood where the defendant lived and eventually located the defendant's residence. Id. The officers informed the mother of the three-year-old girl that the defendant "was starting to molest" her daughter. Id. The officers told the defendant that she could either voluntarily go to the hospital or be placed under arrest. Id. The defendant agreed to go to the hospital where she received treatment for six days. Id. After her release from the hospital, the defendant was charged with aggravated menacing and menacing by stalking. Id.
 {¶ 19} This matter proceeded to a bench trial and the trial court found defendant guilty of both charges. Id. at 2. The defendant appealed her convictions and the Eleventh District Court of Appeals reversed defendant's convictions and explained:
 {¶ 20} "Thus, in order to convict appellant on the charge of aggravated menacing, the State had to prove beyond a reasonable doubt that appellant knowingly caused the three-year old neighbor girl to believe that appellant would cause serious physical harm to her, or that appellant knowingly caused the mother to believe that appellant would cause serious physical harm to her daughter. Clearly, one of the elements of the crime is for the perpetrator to knowingly cause the victim tobelieve that the offender will carry out his or her threat.
 " * * * {¶ 21} "Quite simply, whatever thoughts that appellant was having about the neighbor girl were never made known to the potential victim or her family until the police informed them on August 29, 1996. Without a threat made known to the potential victim or her family, a key element of both the aggravated menacing and menacing by stalking statutes is missing." (Emphasis sic.) Id.
 {¶ 22} In the Richard case, the defendant telephoned Josephine Manos, an employee of the Mahoning County Child Support Enforcement Agency ("CSEA"), regarding the agency's interception of his tax refund due to a child support arrearage. Id. at 558. During the telephone conversation, appellant became upset and stated something to the effect of "I should just kill her, maybe that will end it all." Id. Ms. Manos informed her supervisor of this conversation who, in turn, contacted the police. Id. Ms. Manos filed a police report. Id. The CSEA supervisor contacted appellant's former spouse, Celesta Moran, and warned her about the comment appellant made to Ms. Manos. Id.
 {¶ 23} Ms. Moran filed a complaint against appellant. Id. The police charged appellant with aggravated menacing. Id. Following a bench trial, the trial court found appellant guilty as charged. Appellant appealed to the Seventh District Court of Appeals. Id. One of appellant's arguments on appeal was that in order to be guilty of menacing, the offender must threaten to hurt either the hearer of the threat or a member of the hearer's immediate family. Id. at 559. Specifically, the defendant argued that he could not menace his ex-wife by expressing his thoughts and venting his anger to a CSEA case worker who is not related to his former wife. Id.
 {¶ 24} In concluding that the defendant was not guilty of menacing because the alleged victim was neither the person to whom he addressed his threats nor a close relative of that person, the Seventh District Court of Appeals reviewed the legislative history of R.C. 2903.21. In doing so, the court explained:
 {¶ 25} "* * * [T]he Legislative Service Commission comments to R.C.2903.21 explain that `the threatened harm need not be directed at the victim as such, but may be directed at a member of the victim's immediate family. Under former law, the person to whom the threat was addressed had also to be the object of the threatened harm.' The former law, R.C.2901.25, stated, `No person shall assault or threaten another in a menacing manner * * *." 1953 H.B. No. 1.
 {¶ 26} "This legislative history demonstrates that prior to 1974 an offender convicted of menacing had to threaten to injure the person to whom he was speaking. After the 1974 amendment, the offender could also threaten to injure an immediate relative of the person to whom he was speaking. In addition, the general rules of statutory construction require a criminal statute to be strictly construed against the state and liberally construed in favor of the accused. State v. Conley (1947),147 Ohio St. 351, 353, 34 O.O. 279, 280, 71 N.E.2d 275, 276." Id. at 560.
 {¶ 27} We conclude the Chmiel and Richard cases correctly interpret the legislative intent of R.C. 2903.21. We reach this conclusion for several reasons. First, the plain language of R.C. 2903.21 specifically identifies to whom the threat of serious physical harm must be directed in order to find a violation of the statute. Second, the legislative history of R.C. 2903.21 supports this conclusion because prior to 1974, the alleged perpetrator had to threaten to injure the person to whom he or she was speaking. However, after 1974, the General Assembly broadened the class of potential victims to include immediate family members of the person to whom the alleged perpetrator made the threat of serious physical harm. In expanding the class of potential victims, the General Assembly did not go so far as to include persons who were not directly spoken to by the alleged perpetrator or persons who were not immediate family members of the person spoken to by the alleged perpetrator.
 {¶ 28} Third, the line of cases relied upon by the state broadly interprets R.C. 2903.21 by focusing on the culpable mental state of "knowingly." These cases hold that it is sufficient if the alleged perpetrator knows that his or her message will reach the intended target. However, such an interpretation ignores the language of R.C. 2903.21 that specifically identifies the class of potential victims. Although we agree that the culpable mental state is "knowingly," the statute also requires that the alleged perpetrator act "knowingly" toward the class of persons identified in the statute.
 {¶ 29} Accordingly, we conclude the trial court should have granted appellant's motion to dismiss. Appellant's conduct did not rise to a violation of R.C. 2903.21 when he stated a threat of serious physical harm, about Dale Hershey, to Barbara Grim. Mrs. Grim was not the person to whom the threat was directed and Dale Hershey is not an immediate family member of Barbara Grim. Therefore, appellant's First Assignment of Error is sustained. We will not address appellant's Second Assignment of Error as it is moot.
 {¶ 30} For the foregoing reasons, the judgment of the Ashland Municipal Court, Ashland County, Ohio, is hereby reversed.
Wise, J. Gwin, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Ashland County, Ohio, is reversed for further proceedings consistent with this opinion.
Costs assessed to the State of Ohio.